[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Gary Zink, Trustee, from a decision of the Milford Inlands-Wetlands Agency approving an application by Mobil Oil Corporation for an inlands-wetlands permit. That permit would allow Mobil Oil Corporation to remodel and rebuild an existing gasoline service station located at 1354 Boston Post Road in Milford, including all its underground tanks and pipes and to build an accessory self service car wash.
The plaintiff owns property located on the south side of the Boston Post Road at 1377 Boston Post Road. Therefore, his property abuts the property of the Mobil Oil Corporation located on the north side of the Boston Post Road in the center line of the Boston Post Road. As such owner, he is statutorily aggrieved and has standing to bring this appeal. CT Page 12884
The existing service station of the Mobil Oil Corporation is pictured in Exhibit aa. (This and other such references are to exhibits filed with the Inlands-Wetlands Agency and made reference to at the hearing on the application of the Mobil Oil Corporation on July 8, 1992.) Its location with reference to the Boston Post Road is partially shown on Exhibit f. On Drawing 1 of 7 of Exhibit ppp is shown the existing edge of the water as of 2/21/92 drawn with a solid continuous line at elevation 25.83, the area being 4,450 +/- square feet with an approximate depth of 0.67 feet. The proposed edge of the water drawn with a noncontinuous line separated by three dots is also shown on that exhibit, with the edge of the water at elevation 25.67, the area being 5,550 square feet.
The Mobil Oil Corporation proposed to tear down the existing station building, to build a service area with pumps to fill the tanks of cars and trucks, to construct a building where food could be bought and eaten, with rest rooms and an office for the manager of the station. Behind the structures would be an area where car could be parked waiting to pass through a machine which would wash the vehicles. The whole area would be paved, lighted and provided with catch basins for surface water to drop into sewers and eventually flow into the sewer lines of the City of Milford. These facilities are also shown on Drawing 1 of Exhibit ppp.
The wetlands with which this area is concerned is the existing area with the solid continuous line and also the proposed area with the line separated by three dots shown on the above referenced Drawing 1 of 7 on Exhibit ppp. The existing area of concern now is partially land and partially water. The proposed area would be all water.
The proposal of the Mobil Oil Corporation was submitted to the Inlands-Wetlands Agency by an application dated May 14, 1992 and numbered 92-029. It stated that the total area of the land owned by the Mobil Oil Corporation was 45,439 square feet; that the wetland area on the site was 8,045 square feet and the area of the wetland that would be disturbed was 3,450 square feet.
The relevant part of the application reads:
 "5.) DESCRIPTION — INCREASE IN SIZE AND MOVE NORTH-WEST OF EXISTING DETENTION BASIN. THE EXISTING DETENTION BASIN CREATED THE WETLAND AREA WHICH IS THE SUBJECT OF THIS APPLICATION. ALTHOUGH THE CT Page 12885 BASIN AREA WILL INCREASE, THE ACTUAL WETLAND AREA WILL DECREASE.
 PURPOSE — PROPOSED REDEVELOPMENT OF THIS SITE WILL INCREASE THE PERCENTAGE OF DEVELOPED AREA AS WELL AS REDIRECT A PORTION OF THE EXISTING SITE STORM WATER RUNOFF, WHICH IS CURRENTLY FLOWING ONTO BOSTON POST RD., TO THE NEW DETENTION BASIS. DUE TO THIS INCREASE IN STORM WATER ENTERING THE BASIN AND A DESIGN WHICH DOES NOT INCREASE THE FLOW OF STORM WATER INTO THE EXISTING STORM SEWER OUTLET THE DETENTION BASIN MUST BE INCREASED IN SIZE.
 6.) ALTERNATIVES — MOBIL HAD CONSIDERED PUTTING THE PROPOSED CAR WASH BEHIND THE NEW G.S. BUILDING AND PARALLEL WITH BOSTON POST RD. THIS LAYOUT WOULD CREATED (sic) A GREATER DEGREE OF FILLING OF THE EXISTING WETLAND AREA THAN THE CURRENT PROPOSAL."
By a legal notice dated June 18, 1992, the matter was assigned for a public hearing on July 8, 1992. The Agency noted that a site inspection by its members was scheduled for May 30 1992 at 8:30 a.m.
At the hearing on July 8, 1992, nine members of the Agency were present. The applicant was represented by Bill Clark of the Mobil Oil Corporation; by Harry Shepard, an engineer with Criscuolo Associates which prepared the plans for the project; by David Lord, Environmental Consultant and Social Scientist; and by Kirk Hollenbeck, Keith Perry, Paul Judy and Richard Anderson, the operator of the station. One person submitted a letter in favor of the project.
At the hearing, Attorney Chris Cody of Milford represented the plaintiff herein.
The hearing opened at 7:30 p. m. and was adjourned at 9:15 p. m. The minutes of the hearing were 47 pages in length.
Then, at its regular meeting held August 5, 1992, the Inlands-Wetlands Agency voted 5 to 2 to approve the application. Exhibit EEE. The motion on which the Agency voted reads:
 "that we approve application 92-029 based on the memo from the City Engineer dated 8/4/92; letter from David M. CT Page 12886 Lord of Social Resources Consultants; Mr. Kurt Hollenbeck of Criscuolo, Shepard Associates dated 7/18/92 and the letter from Harry, Shepard of Criscuolo, Shepard Associates to Mary Rose Palumbo dated 7/28/92, with conditions and bond to follow."
These letters are respectively Exhibit bbb, Exhibit E, Exhibit XX and Exhibit aaa.
On August 11, 1992, Mary Rose Palumbo wrote Kurt Hollenbeck as follows:
 Re: Application IW-92-029, 1354 Boston Post Road, Milford, CT, Map 89, Block 836, Parcel 58
Dear Mr. Hollenbeck:
 Pursuant to Section 22a-42a of the Connecticut General Statutes and Milford Inland Wetlands Regulations Sections 6-12, this is to inform you that the Milford Inland Wetlands Agency APPROVED WITH CONDITIONS AND BOND TO FOLLOW your above referenced application, at its August 5, 1992 meeting. The conditions and bond for your application will be discussed at the August 19, 1992 Inland Wetlands Agency Meeting in conference room A of the Persons Municipal Office Building, 70 West River Street at 7:30 PM.
 Enclosed please find the proposed permit conditions and bond calculation for your application.
 Should you have any questions, please do not hesitate to call me at 783-3256."
The conditions referred to in this letter are in Exhibit jjj. They fill five printed pages and hence are not set out herein.
In Exhibit MMM, Mary Rose Palumbo wrote to Kurt Hollenbeck that the Inland Wetlands Agency approved the conditions and bond involved in the application.
On September 16, 1992, the plaintiff's appeal from the granting of the permit by the Inland Wetlands Agency was filed in this court. CT Page 12887
The Plaintiff claimed he is aggrieved as follows:
"5. The Plaintiff aggrieved in the following ways:
 (a) The Plaintiff appeared through a duly authorized representative at the public hearing conducted by the Defendant Inland Wetlands Commission of the City of Milford.
 (b) The terms of the approval issued by the Defendant Inland Wetlands Commission permits the applicant to conduct construction activity within a regulated inland wetland and to fill a portion of said wetland.
 (c) The terms of the approval issued by the Defendant Inland Wetlands Commission permits to applicant to adversely affect the characteristics of said wetland area through a modification of the area drainage pattern and topography, which modification will adversely and directly affect said wetland area and the the (sic) drainage characteristics and capabilities of all surrounding properties, including the property of the Plaintiff and causing increased storm water runoff and related consequences to the Plaintiff's property."
The plaintiff also claimed that the Inland Wetlands Agency acted illegally, arbitrarily and in abuse of its discretion in that:
 "(a) said Commission failed to adhere to the requirements of Section 7.5 of the Commission's regulations in failed to require the applicant to provide mitigating measures for the regulated activity proposed in the inland wetland area.
 (b) said Commission failed to make a finding that a feasible and prudent alternative to the proposed activity does not exist which is the Commission's statutorily mandated function as provided in Section 22a-41 of the Connecticut General Statutes."
The plaintiff finally appealed from the granting of the permit and prays that the Court direct this Board to deny the application CT Page 12888 for such other relief as is proper.
The court heard the matter at length on October 10, 1994. Briefs had been filed and oral argument made on that date.
The authority controlling this matter is Sampieri v. InlandWetlands Agency of the City of West Haven, et al., 226 Conn. 579
(1993). In that case, the Supreme Court ruled that the controlling statute is Sec. 22a-41(b), the relevant part which reads:
 "In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist."
The court notes that Sec. 22a-42(c) makes the above quoted section applicable to any municipality which establishes an inland wetland agency.
In the Sampieri case, the Supreme Court ruled as follows:
 "In order to issue a permit, the local inland wetlands agency must find that `a feasible and prudent alternative goes not exist.' General Statutes § 22a-41(b). We have determined that an applicant for an inland wetlands permit has the burden of proving that it has met the statutory prerequisites for a permit. Strong v. Conservation Commission, 226 Conn. 227, 229, A.2d (1993); see also Huck v. Inland Wetlands Watercourses Agency, supra, 553 n. 18. The applicant, accordingly, must demonstrate to the local inland wetlands agency that its proposed development plan, insofar as it intrudes upon the wetlands, is the only alternative that is both feasible and prudent. . . . Thus, for a wetlands permit to issue, the local inland wetlands agency must determine that the alternative presented by the applicant is not only sound from an engineering standpoint but is also economically reasonable in light of the social benefits derived from the activity. . . . The agency listened to a considerable amount of testimony from innumerable witnesses, including laypersons, experts and attorneys on both sides. It diligently asked questions and engaged in ample deliberations. Huck v. Inland Wetlands Watercourses Agency, supra, 543-44. The agency evaluated the evidence presented and appraised the credibility of CT Page 12889 the witnesses. We conclude, as did the trial court upon its review of the record, that the agency's decision to approve the permit constituted an implicit finding that no other feasible and prudent alternatives exists;"
The above quotes describe what the Inland-Wetlands Agency aid in this case.
This court is convinced from the discussion of the inland Wetlands Agency prior to the vote of that agency approving the application of the Mobil Oil Corporation and from the references to the exhibits considered in the vote of that agency that the requirements of Sec. 22a-41(b) have been met in this instance.
Accordingly, plaintiff's appeal is dismissed.
Thomas J. O'Sullivan Trial Referee